IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JESIBETH LOPEZ,** : | **CIVIL ACTION** |
| Plaintiff, : | |
| : | |
| vs. : | NO.   20-cv-327 |
| : | |
| **KILOLO KIJIKAZI[1]**, : | |
| **Commissioner of Social Security,** : | |
| Defendant. : | |

## MEMORANDUM OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                          October 7, 2021

Jesibeth Lopez (Plaintiff) filed this action pursuant to 42 USC § 405(g) seeking review of the Commissioner of the Social Security Administration's decision denying her claim for Supplemental Security Income (SSI) under Title II of the Social Security Act. This matter is before me for disposition upon consent of the parties. For the reasons set forth below, Plaintiff's request for review is **GRANTED,** and the matter is remanded for further proceedings consistent with this memorandum.

### I.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI on February 17, 2017. (R. 70). Plaintiff alleged disability beginning on June 3, 2015, due to depression, bipolar disorder, ovarian cysts, and anemia. (R. 299). Plaintiff's application was initially denied on April 26, 2017, and she requested a hearing from an Administrative Law Judge (ALJ), which occurred on November 16,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi has been substituted for Andrew Saul as the Defendant in this case.

2018.  (R. 134–38, 85–111).  Plaintiff, represented by an attorney, appeared and testified at the hearing, as did an impartial vocational expert (VE).  (R. 85–111).  On December 24, 2018, the ALJ issued a decision denying benefits under the Act.  (R. 70–79).  Plaintiff requested review of the ALJ's decision, and the Appeals Council denied her request on November 19, 2019, making the ALJ's December 24, 2018 decision the final decision of the Commissioner.  (R. 1–9).

Plaintiff filed a complaint in this Court *pro se* on January 17, 2020.  (ECF No. 2).  Plaintiff filed a Motion for Appointment of Counsel, which was granted on January 28, 2020.  (ECF No. 8).  The Commissioner filed an Answer to Plaintiff's complaint on March 27, 2020.  (ECF No. 11).  Plaintiff filed a Motion for an Extension of Time to File Plaintiff's Brief and Statement of Issues, which was granted.  (ECF No. 17).  Plaintiff then filed her Brief and Statement of Issues in Support of Request for Review on July 30, 2020.  (ECF No. 18).  The Commissioner filed a Response on August 10, 2020 (ECF No. 19), and after another extension, Plaintiff filed a modified Brief and Statement of Issues on September 8, 2020.  (ECF No. 22).  The parties have consented to my jurisdiction.  (ECF No. 4).

**II.    FACTUAL BACKGROUND**

The Court has reviewed the administrative record in its entirety, and summarizes here the evidence relevant to the instant request for review.

Plaintiff was born on December 29, 1985, making her thirty-one years old as of February 17, 2017, the date her application was filed.  (R. 77).  This places her in the category of a younger individual, age eighteen to forty-nine.  *Id.*  She has no history of past relevant work.  *Id.*

Plaintiff did not claim that any physical impairment affected her ability to work, but rather claimed that her mental impairments prevented her from working.  (R. 94).  She alleged

mental impairments including depression and bipolar disorder.[2]  (R. 299).  The ALJ also found that Plaintiff's asthma constituted a severe impairment.  (R. 72).

### A.     Mental Health Treatment

On September 11, 2015, Dr. Ely Sapol conducted a psychiatric evaluation of Plaintiff. (R. 370).  Dr. Sapol noted that Plaintiff was psychiatrically hospitalized in Puerto Rico in 2007 for severe depression.  *Id.*  Plaintiff reported difficulty falling asleep, loss of appetite, dysphoric mood, crying spells, and irritability.  (R. 371).  She denied any suicidal or homicidal intent, but stated that she'd had such feelings in the past.  *Id.*  She also stated that there are times when she feels a need to "run."  *Id.*  Dr. Sapol conducted a mental status examination of Plaintiff, and found that her manner of relating and social skills improved as the session progressed.  *Id.*  He found that her dress and grooming were appropriate; her speech was fluent and easily intelligible; and her thought processes were coherent and goal directed with no evidence of hallucinations, delusions, or paranoia.  (R. 371–72).  Her affect was anxious and depressed, and her mood was dysthymic.  (R. 372).  She was oriented with respect to person, place, and time, her attention and concentration were intact, and with regard to her recent and remote memory skills could name three out of three objects immediately and three out of three objects after five minutes of interrupted discussion.  *Id.*  Dr. Sapol did not formally assess her cognitive abilities, but opined that they appeared to be below average.  *Id.*  He also found her insight to be fair, and her judgment to be fair to poor.  *Id.*  He noted that she was able to dress, bathe, and groom herself; that she would sometimes cook, clean, or do laundry; and that she could take public transportation.  *Id.*  Based on his examination, Dr. Sapol diagnosed Plaintiff with major

---

[2] Plaintiff also alleged that her ovarian cysts, ulcers, and anemia limited her ability to work.  (R. 299).  The ALJ found these impairments to be non-severe.  (R. 72–73).  Plaintiff does not challenge this finding.

3

depressive disorder, single and recurrent episodes, and generalized anxiety disorder. (R. 373). In his statement of Plaintiff's ability to work-related activities, Dr. Sapol found that Plaintiff had mild limitations with regard to her ability to understand, remember, and carry out simple instructions; moderate limitations in her ability to make judgments on simple work-related decisions; and marked limitations in understanding, remembering, and carrying out complex instructions, and the ability to make judgments on complex work-related decisions. (R. 374). He also found marked limitations in Plaintiff's ability to interact appropriately with the public, supervisors, and co-workers, and to respond appropriately to usual work situations and changes in a routine work setting. (R. 375). Dr. Sapol stated that the factors supporting these latter findings were that Plaintiff was depressed with no work history, and that she isolated herself. *Id.*

Plaintiff was incarcerated at Riverside Correctional Facility in 2016. (R. 99, 497–622). During this time, she was diagnosed with major depressive disorder and insomnia, for which she was prescribed Zyprexa and Prozac. (R. 498, 502, 508, 517–20, 527–31, 584–86, 636–41).

From August 29, 2016 to February 17, 2017, Plaintiff received treatment at Mary Howard Health Center. (R. 784–809). On March 10, 2017, CRNP Margaret Enright, Plaintiff's treating nurse practitioner, found that Plaintiff suffered from anxiety, change in sleep pattern, depression, and becoming easily irritated. (R. 785). She noted her mental status as alert, and her appearance as neatly groomed. (R. 786). Plaintiff denied having suicidal or homicidal thoughts, but stated that she had cut herself with no intent of killing herself. *Id.* Enright found Plaintiff's insight to be poor. *Id.*

On April 13, 2017, Dr. Kimberly Doyle conducted a consultative mental status evaluation of Plaintiff. (R. 831). Dr. Doyle found that Plaintiff was cooperative, and her manner of relating was fair. (R. 833). Plaintiff was well-groomed, her eye contact was appropriate, and her speech

was intelligibly fluent, though she was noted to have word finding difficulties. *Id.* Her thought processes were coherent and goal directed with no evidence of hallucinations, delusions, or paranoia. *Id.* Dr. Doyle found that Plaintiff's attention, concentration, and memory were impaired due to below average intellectual functioning, though she did not administer an intellectual function test. (R. 833–34). Dr. Doyle found Plaintiff's insight and judgment to be poor. *Id.* She diagnosed Plaintiff with major depressive disorder and history of bipolar disorder. *Id.* She found that Plaintiff suffered moderate impairment in her ability to understand, remember, and carry out simple instructions, make judgments on simple work-related decisions, understand, remember, and carry out complex instructions, and make judgments on complex work-related decisions. (R. 836). Dr. Doyle also found that Plaintiff suffered moderate impairments in her ability to interact appropriately with the public, supervisors, and co-workers, and to respond appropriately to usual work situations and to changes in a routine work setting. (R. 837).

On September 29, 2017, Plaintiff visited CRNP Enright again. (R. 863). At this visit, Plaintiff reported feeling happy and energetic, and stated that she had been off her medications for two months, was feeling better, and no longer wanted to take the medications. *Id.*

On July 27, 2018, CRNP Enright noted that Plaintiff had recently reconnected to outpatient treatment. (R. 922). On October 1, 2018, CRNP Enright completed a Medical Assessment of Ability to Do Work-Related Activities. (R. 993). CRNP Enright found that Plaintiff possessed only fair to no ability to complete the various job duties listed, including: following work rules; remembering work-like procedures; maintaining attention for extended periods; maintaining regular attendance; sustaining an ordinary routine without special supervision; working in proximity with others without being distracted by them; interacting with

supervisors; making work-related decisions; getting along with co-workers; asking simple questions or requesting assistance; dealing with work stresses; functioning independently; dealing with the public; and using judgment in work-like settings. (R. 994). CRNP Enright also found Plaintiff to possess poor/no ability to understand, remember, and carry out complex or detailed job instructions, and fair ability to understand, remember, and carry out simple job instructions. (R. 995). She found that Plaintiff possessed good ability to maintain her personal appearance, poor/no ability to behave in an emotionally stable manner or relate predictably in social situations, and fair ability to demonstrate reliability. *Id.*

### B. Lay Testimony

Plaintiff testified at the November 16, 2018 administrative hearing that she had no physical conditions that prevented her from working, but that her anxiety and depression kept her from working too long in one place. (R. 93–94). She testified that she does not cook, clean, or do any household chores, and that she has taken public transportation but prefers to walk. (R. 93, 96). She stated that she prepares her partner breakfast about once a week, and that she spends her day walking around the house and watching TV for up to ten minutes at a time. (R. 96–97). She also testified that she often feels desperate and feels like running away when she is around people, because she thinks they are going to hurt her. (R. 98). Plaintiff testified that taking medication calms her desperate feelings. (R. 100–101). She also testified that her symptoms affect her sleep, and that when she cannot sleep, she hears "weird" sounds and sees dark shadows. (R. 102).

### III.     LEGAL STANDARD

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits [her] physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform [her] past work. If the claimant cannot perform [her] past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 404.1520. The claimant bears the burden of establishing steps one through four, and then the burden shifts to the Commissioner at step five to establish that the claimant is capable of performing other jobs in the national economy, in light of her age, education, work experience and residual functional capacity.[3] *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is

---

[3] Residual functional capacity ("RFC") is defined as "that which an individual is still able to do despite the limitations caused by [her impairments]." 20 C.F.R. § 404.1545(a); *see also Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001).

bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

### IV.     ALJ'S DECISION

Using the five-step inquiry described above, the ALJ determined that Plaintiff was not disabled. (R. 72–79). The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since February 17, 2017, the application date.

2. The claimant has the following severe impairments: depressive disorder, anxiety disorder, and asthma.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except she can never climb ladders ropes or scaffolds; she is limited to simple routine tasks; she can never have contact with the general public; can only

occasionally work in an environment with common pulmonary irritants; needs a low stress environment defined as one where she is not responsible for fiscal, managerial or personnel related decisions; she cannot work at a conveyor belt pace.

5. The claimant has no past relevant work.

6. The claimant was born on December 29, 1985 and was 31 years old, which is defined as a younger individual age 18–49, on the date the application was filed.

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 17, 2017, the date the application was filed.

(R. 72–79) (internal citations omitted).

Accordingly, the ALJ determined that Plaintiff was not disabled.  (R. 79).

## V. DISCUSSION

In her request for review, Plaintiff raises three claims: (1) that the ALJ erred in assigning little weight to the opinion of Plaintiff's treating nurse practitioner, CRNP Enright; (2) that the ALJ erred in assigning little weight to the opinion of examining psychologist Dr. Sapol; and (3) that the ALJ failed to include all of Plaintiff's limitations as set forth by Dr. Sapol and CRNP

Enright in her RFC and hypothetical question to the vocational expert.[4]  I find that the ALJ failed to properly consider CRNP Enright's medical opinion, but that the ALJ's treatment of Dr. Sapol's medical opinion is supported by substantial evidence.

### A. Treating CRNP Enright's Opinion

Plaintiff's first claim concerns the weight the ALJ afforded to the opinion of CRNP Enright.  Plaintiff argues that the ALJ erred in assigning little weight to CRNP Enright's opinion because Enright, though a non-acceptable source, treated Plaintiff and produced an opinion that was consistent with the rest of the medical evidence.  (Pl.'s Br., ECF No. 18, at 10–13).

The ALJ alone is responsible for making the disability determination.  20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).  In making that determination, the ALJ is "free to accept some medical evidence and reject other evidence," so long as she "provides an explanation for discrediting the rejected evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014); 20 C.F.R. §§ 404.1527, 416.927.  Generally, "opinions of [Plaintiff's] treating physician are entitled to substantial and at times even controlling weight." *Fargnoli*, 247 F.3d at 43; *see also* 20 C.F.R. § 404.1527(d)(2).  However, an ALJ may reject a treating physician's opinion on the basis of contradictory medical evidence, *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000), and may choose which medical opinions to credit. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).  Regardless of what weight the ALJ assigns to medical opinions, the ALJ must adequately explain the evidence she rejects or affords lesser weight. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d

---

[4] In her Brief and Statement of Issues in Support of Review, Plaintiff also asserted the claim that the ALJ failed to include all of the limitations set forth by Dr. Dawn Long, the psychologist who reviewed Plaintiff's case for the state agency, in her RFC assessment.  (Pl.'s Br., ECF No. 18, at 16).  However, Plaintiff withdrew this claim in her modified Brief.  (Mod. Br., ECF No. 22, at 8, n. 2).

500, 505-06 (3d Cir. 2009). "The ALJ's explanation must be sufficient enough to permit the court to conduct a meaningful review." *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 119-20 (3d Cir. 2000).

In weighing the medical evidence, the Social Security Regulations differentiate between "acceptable medical sources" and "other sources," or non-acceptable sources. *See* 20 C.F.R. §§ 404.1502, 404.1513(a), 404.1513(d). Only acceptable sources may be considered treating sources and thereby entitled to controlling weight. *See* SSR 06-03p, 2006 WL 2329939, at *2. By contrast, an ALJ may consider non-acceptable sources in assessing a claimant's disability, and may reject or accept the opinion after explaining his reasons for doing so. *See Hartranft v. Apfel*, 181 F.3d 358, 361–62 (3d Cir. May 18, 1999) (finding ALJ properly afforded little weight to the opinion of a chiropractor when that opinion was inconsistent with acceptable sources and claimant's own account of his activities); *Weidman v. Colvin*, 164 F.Supp.3d 650, 663–64 (M.D. Pa. Sept. 30, 2015) (finding ALJ properly afforded no weight to the opinion of a nurse practitioner when the ALJ cited conflict with the medical evidence of record); *contrast Rivera v. Colvin*, 2016 WL 1720423, at *6 (E.D. Pa. Apr. 29, 2016) (finding ALJ erred in affording no weight to the opinion of a nurse practitioner where the ALJ ignored the nurse practitioner's treatment notes from numerous occasions when she physically examined and treated claimant).

CRNP Enright, as a nurse practitioner, is a non-acceptable source according to Social Security regulations. *See* § 416.913(d)(1). Because of this, her opinion cannot be given controlling weight. Nonetheless, Plaintiff argues that the ALJ erred in assigning little weight to her opinion because it was consistent with the rest of the medical evidence.

The ALJ explained her decision to give little weight to Enright's opinion by stating that it was "not reflective of [Plaintiff's] overall level of functioning when she is engaged in mental

health treatment." (R. 77). The ALJ reached this conclusion because Plaintiff had only restarted treatment three months prior to the time Enright authored her opinion. The ALJ asserted that "[w]hen [Plaintiff] initially had treatment beginning in 2017, it took her about seven months to stabilize herself from February to September 2017, and there is no evidence that something has changed or she will not improve since restarting treatment in 2018." (R. 77). The ALJ based her finding that Plaintiff's condition had stabilized with treatment on CRNP Enright's treatment notes from September 2017, where Plaintiff reported feeling happy and energetic, denied feeling depressed, and indicated that she no longer wanted to take her medications. (R. 863).

      An ALJ may properly reject the opinion of a non-acceptable source when it is inconsistent with the rest of the medical record. *See Hartranft*, 181 F.3d at 361–62. However, the ALJ may not rely on "speculative inferences from medical reports" or substitute her own lay judgment for that of a medical professional. *See Morales v. Apfel*, 225 F.3d 310, 317–18 (3d Cir. 2000). Here, Plaintiff's treatment notes from September 2017 state only that she was feeling happy and wanted to discontinue her medication, not that she had "stabilize[d] herself." (R. 77, 863–64). The ALJ's conclusion that Plaintiff's condition stabilized in 2017 thus constitutes an inference based on the ALJ's own interpretation of the medical records. Further, the ALJ inferred based on Plaintiff's previous improvement with treatment that she would continue to improve after restarting treatment in 2018. (R. 77). However, the ALJ points to no evidence in the medical record showing that Plaintiff in fact improved by the time of the administrative hearing on November 16, 2018, approximately six months after she restarted treatment. Given the lack of medical support for the ALJ's prediction that Plaintiff would improve, this inference in particular constitutes an improper use of the ALJ's lay judgment. *See Morales*, 225 F.3d at 317–18.

Finally, courts have recognized that someone who responds positively to treatment is not necessarily able to work. *See Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011) (responding well to treatment was not inconsistent with physician's opinion that claimant was unable to work when claimant continued to experience frequent bouts of crying and paranoia due to her bipolar disorder); *Morales*, 225 F.3d at 319 (note from physician that claimant was "stable and well controlled with medication" did not support conclusion that he could return to work because claimant still experienced marked limitations in a number of work-related activities); *contrast Torres v. Barnhart*, 139 Fed.Appx. 411, 414–15 (3d Cir. 2005) (finding physician's opinion inconsistent with record showing dramatic, continuous improvement in levels of social functioning and decrease in psychotic symptoms after taking medication). Here, the medical record falls short of demonstrating continuous improvement in Plaintiff's symptoms because she was still experiencing them when CRNP Enright wrote her opinion and at the administrative hearing in late 2018. (R. 806–07, 93–94). This requires the Court to speculate as to whether Plaintiff's improvement in 2017 in fact signified a consistent positive response to treatment, or was merely temporary as alleged by Plaintiff.

Because of this, the ALJ's rejection of CRNP Enright's medical opinion was not based on substantial evidence, and remand is appropriate.

### B.     Consultative Examiner Dr. Sapol's Opinion

Plaintiff also asserts that the ALJ erred by affording little weight to the opinion of consultative examiner Dr. Ely Sapol, who examined Plaintiff for the Pennsylvania Bureau of Disability Determination on September 11, 2015, as part of a prior application for disability benefits. (R. 370–76). The ALJ found that Dr. Sapol's opinion was distant in time, and that it overestimated Plaintiff's limitations by relying in part on Plaintiff's history of never having

13

worked. (R. 77). Plaintiff argues that Dr. Sapol's opinion is not so distant in time as to be legally irrelevant, and that Dr. Sapol actually based his opinion on his clinical interview and mental status examination of Plaintiff. (Pl.'s Br., ECF No. 18, at 14–15).

Because Dr. Sapol conducted his examination in 2015, more than one year before Plaintiff filed the instant application for benefits, the ALJ was not obliged to consider his opinion. *Miller v. Comm'r of Soc. Sec.*, 719 F.Appx. 130, 133 (3d Cir. 2017) (ALJ properly considered previous twelve months of medical records but was not obligated to consider records dating back to the alleged start date of the disability); 20 CFR § 416.912(b) (a claimant's "complete medical history" includes medical records covering at least the twelve months preceding the month in which the application was filed). Therefore, the ALJ's finding that Dr. Sapol's examination was "distant in time" was proper. Nonetheless, the ALJ chose to address this opinion in her decision, and found that the opinion was an overestimation of Plaintiff's limitations. This finding is supported by substantial evidence.

Dr. Sapol wrote that Plaintiff displayed marked limitations in her ability to interact appropriately with the public, supervisors, and co-workers, and to respond appropriately to usual work situations and changes in a routine work setting. (R. 375). He wrote that one of the factors he considered in finding these marked limitations was Plaintiff's history of never having worked. *Id.* The ALJ noted this and found that such a consideration was outside the scope of his assessment. (R. 77). The ALJ also found that Dr. Sapol's opinion was an overestimation of Plaintiff's limitations as indicated by the rest of the medical record. *Id.*

Because Dr. Sapol conducted only a consultative examination of Plaintiff and was not a treating physician, his opinion is not entitled to controlling weight. *See* 20 CFR § 416.927(c)(2). Elsewhere in her opinion, the ALJ noted that Plaintiff's outpatient mental status examinations

observed her to be functioning well despite her subjective complaints. *See* Part III.A.1; R. 77, 784–809, 831–40, 847–915, 922–92. The ALJ also noted that Plaintiff engaged in a number of activities of daily living, such as dressing and bathing, cleaning, shopping for groceries, and taking public transportation. (R. 77, 834). Finally, the ALJ explained that she gave greater weight to the opinion of Dr. Doyle, who examined Plaintiff in the twelve months before she filed her application, and who found only mild and moderate limitations. (R. 75–76, 831–40). Based on this, the ALJ properly explained her finding that Dr. Sapol's findings of marked limitations were inconsistent with the rest of the medical record. *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014); 20 C.F.R. §§ 404.1527, 416.927.

Accordingly, I find that the ALJ properly weighed Dr. Sapol's opinion, and substantial evidence supports her decision to afford it little weight. Plaintiff's request for relief on this basis will be denied.

### C.     VE Hypothetical

Finally, Plaintiff argues that the ALJ failed to include all of Plaintiff's limitations as set forth by Dr. Sapol and CRNP Enright in her RFC and hypothetical question to the vocational expert. Because I am remanding this matter for consideration of medical opinion evidence that may impact the RFC assessment, I will not address Plaintiff's argument on this issue. It is possible that, on remand, the ALJ may reach different conclusions as to RFC, resulting in an entirely new hypothetical to the VE.

## VI.     CONCLUSION

For the reasons set forth above, I find that the ALJ erred by failing to provide sufficient evidentiary basis for her rejection of CRNP Enright's medical opinion. Accordingly, Plaintiff's

request for review is **GRANTED** to the extent that it requests remand. This matter is remanded to the Commissioner for further proceedings.

BY THE COURT:

　/s/ Lynne A. Sitarski　
LYNNE A. SITARSKI
United States Magistrate Judge